[ORAL ARGUMENT NOT YET SCHEDULED]

No.

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

In re: GULED HASSAN DURAN,

Petitioner.

---

**PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

---

Sabrina Shroff
80 Broad Street, 19th Floor
New York, New York 10004

Wayne J. Aaron
2832 Glen Ellen Drive
Flower Mound, Texas 75022

Michael P. Leahy, Maj, USAF
Military Commissions Defense
Organization
1620 Defense Pentagon
Washington, D.C. 20301-1620

J. Wells Dixon
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, New York 10012
Telephone: (212) 614-6423
wdixon@ccrjustice.org

*Counsel for Petitioner*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ..............................................................................1

JURISDICTION......................................................................................................3

RELIEF SOUGHT...................................................................................................4

ISSUES PRESENTED.............................................................................................4

STATEMENT OF FACTS .......................................................................................5

    A.  Procedural History ........................................................................................6

    B.  The Guantanamo Detention Facility ...........................................................11

REASONS WHY THE WRIT SHOULD ISSUE ..................................................15

    1.  Petitioner Has No Other Adequate Means to Obtain Relief.........................15

    2.  Petitioner Has a Clear and Indisputable Right to Relief..............................17

    3.  The Writ Is Appropriate Under the Circumstances of This Case.................19

    4.  The Court Should Summarily Grant Petitioner's Habeas Petition and Order Other Relief to Prevent Further Irreparable Harm and Ensure that Habeas Corpus Is Effective ...............................................................23

        i.  The Court Has Authority to Grant Summary Relief ...............................24

        ii.  The Court Should Exercise Its Authority Given the Unique Facts and Circumstances of this Case.............................................................26

        iii. Alternatively, the Court Should Order the District Court to Dispose of Petitioner's Habeas Petition Promptly and Order Interim Habeas Relief...........................................................................31

CONCLUSION......................................................................................................33

CERTIFICATE OF COMPLIANCE ................................................................... 35

CERTIFICATE OF SERVICE ........................................................................... 36

ADDENDA .......................................................................................................... 37

    CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
    CASES, PURSUANT TO CIRCUIT RULE 21(d) ............................................. 38

    CLASSIFIED ADDENDUM ................................. [Filed Separately Under Seal]

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Al-Hela v. Biden*, 66 F.4th 217 (D.C. Cir. 2023).......... 1, 3 n.3, 8, 12, 14 n.5, 21, 29

*Baker v. Sard*, 420 F.2d 1342 (D.C. Cir. 1969).....................................................33

*Braden v. 30th Jud. Cir. Court of Ky.*, 410 U.S. 484 (1973)...................................18

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)........................................................25

*Boumediene v. Bush*, 553 U.S. 723 (2008)....3, 14 n.5, 17, 19, 20, 21-22, 25, 30, 32

*Carafas v. LaVallee*, 391 U.S. 234 (1968)......................................................17, 26

*Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367 (2004)....................................15

*Clark v. Martinez*, 543 U.S. 371 (2005) ........................................................30 n.8

*Cross v. Harris*, 418 F.2d 1095 (D.C. Cir. 1969)...................................................18

*Foucha v. Louisiana*, 504 U.S. 71 (1992)...............................................................19

*Glover v. United States*, 531 U.S. 198 (2001) .......................................................16

*Gutierrez v. Noem*, 25-cv-1766 (SLS) (D.D.C.).....................................................14

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ................................ 7, 11, 12, 20, 30 n.8

*Harris v. Nelson*, 394 U.S. 286 (1969) ......................................................16, 21, 24

*Hensley v. Municipal Court*, 411 U.S. 345 (1973) ................................................32

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ............................................................32

*In re Al-Nashiri*, 921 F.3d 224 (D.C. Cir. 2019) ..............................................15, 32

*In re United States*, 143 F.4th 411 (D.C. Cir. 2025)..............................................25

*INS v. St. Cyr*, 533 U.S. 289 (2001)..........................................................19, 30 n.8

*Johnson v. Avery*, 393 U.S. 483 (1969) ..................................................................31

*Johnson v. Rogers*, 917 F.2d 1283 (10th Cir. 1990)...............................................18

*Jones v. Cunningham*, 371 U.S. 236 (1963) ..........................................................25

*Jones v. Shell*, 572 F.2d 1278 (8th Cir. 1978) ......................................................19

*Lafler v. Cooper*, 566 U.S. 156 (2012) ................................................................16

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..........................................................21

*McClesky v. Zant*, 499 U.S. 467 (1991)................................................................25

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)..........................................................26

*Rasul v. Bush*, 542 U.S. 466 (2004)........................................................17, 19, 20

*Reno v. Flores*, 507 U.S. 292 (1993) .............................................................14 n.5

*Ruby v. United States*, 341 F.2d 585 (9th Cir. 1965)............................................18

*Sanders v. United States*, 373 U.S. 1 (1963)........................................................25

*Schlup v. Delo*, 513 U.S. 298 (1995) ...................................................................25

*Smith v. Bennett*, 365 U.S. 708 (1961)................................................................21

*Stack v. Boyle*, 342 U.S. 1 (1951) .......................................................................18

*Storti v. Massachusetts*, 183 U.S. 138 (1901)......................................................18

*Suazo-Muller v. Noem*, 25-cv-418 (CJN) (D.D.C.) .............................................14

*Trump v. J.G.G.*, 604 U.S. ___ (2025)............................................................14 n.5

*Van Buskirk v. Wilkinson*, 216 F.2d 735 (9th Cir. 1954)................................. 18-19

*Wingo v. Wedding*, 418 U.S. 461 (1974) .........................................................17, 22

*Yong v. INS*, 208 F.3d 1116 (9th Cir. 2000) ........................................................18

iv

## Statutes

18 U.S.C. § 2339A(a)......................................................................................6

28 U.S.C. § 1651(a) ...................................................................................3, 24

28 U.S.C. § 2241 .......................................................................................3, 24

28 U.S.C. § 2243 ...........................................................................3, 17, 24, 32

Authorization for Use of Military Force,
    Pub. L. No. 107-40, § 2(a), 115 Stat. 224 (2001)...............................3

National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114-
    92, § 1033, 129 Stat. 726, 968 (2015) .....................................27 n.7

National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114-
    92, § 1034(a)(2), 129 Stat. 726, 969 (2015)............................27 n.6

National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-
    60, § 1034, 139 Stat. 718, 1034 (2025) ...................................27 n.7

## Other Authorities

Carol Rosenberg, *Guantanamo Prison Enters 25th Year*, N.Y. Times (Jan.
    11, 2026) .................................................................................15

Carol Rosenberg, *ICE Transfers 18 Migrants from Guantanamo, Emptying
    Detention Site*, N.Y. Times (Oct. 2, 2025) ...................................13

Executive Order 13567, 76 Fed. Reg. 13277 (Mar. 7, 2011) ...................2

The Federalist No. 84 (Alexander Hamilton) ...........................................22

*The Guantanamo Docket*, N.Y. Times (updated Jan. 26, 2026)........................12 n.4

Lead Inspector General, *Operation Southern Guard, Quarterly Report to
    the United States Congress, July 1, 2025 - December 31, 2025* (Feb.
    25, 2026) .................................................................................14

Memorandum, *Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity*, The White House (Jan. 29, 2025) ........13

Paul D. Halliday, Habeas Corpus: From England to Empire (2010) ................ 25-26

Press Release, *DHS Terminating Temporary Protected Status for Afghanistan*, U.S. Dep't of Homeland Sec. (May 12, 2025).........................11

Unclassified Summary of Final Decision, Review Committee, Periodic Review Secretariat, Dep't of Defense (Nov. 11, 2021).............................2 n.2

Unclassified Statement of Petitioner to the Periodic Review Board, Periodic Review Secretariat, Dep't of Defense (July 15, 2021) .............33 n.9

U.S. Const. art. III ....................................................................................................3

## PRELIMINARY STATEMENT

Petitioner Guled Duran, a Somali citizen, has been detained at the U.S. Naval Station at Guantanamo Bay, Cuba, for nearly twenty years without charge or trial. In November 2016, more than a decade after he was rendered there from the Central Intelligence Agency's Rendition, Detention, and Interrogation program, he filed a petition for a writ of habeas corpus in the U.S. District Court for the District of Columbia, challenging his indefinite detention as a violation of the Constitution and laws of the United States. *Duran v. Obama*, 16-cv-2358 (D.D.C.).

Almost a decade later, Petitioner's habeas petition has not been adjudicated by the district court. Despite Petitioner's claims of unlawful detention, the court has not issued rulings on classified discovery motions filed by the parties—two more than six years ago, and one nearly three years ago—which were fully briefed years ago. The motions concern important issues impacting the core of this case under the Suspension Clause and the Due Process Clause of the Constitution, and this Court's *en banc* decision in *Al-Hela v. Biden*, 66 F.4th 217 (D.C. Cir. 2023), requiring "rigorous" scrutiny of Respondents' evidence to ensure meaningful habeas review.[1] The parties have sought rulings on these outstanding matters on

---

[1] The motions include Petitioner's motion for discovery, ECF Nos. 73; 114 (redacted); Respondents' cross-motion for an exception to disclosure, ECF Nos. 78; 109 (redacted); and Petitioner's motion to compel a classified deposition, ECF Nos. 149; 154; 155; 172-5 to -7 (redacted). The motions are addressed in a Classified Addendum to this Petition.

multiple occasions. Most recently, seven months ago, Petitioner filed a motion requesting rulings on the pending motions, which Respondents did not oppose. But the district court has not resolved the motions, entered a scheduling order, or moved the case toward a hearing on the merits of Petitioner's habeas petition.

In the meantime, nearly five years ago, Petitioner was approved for transfer by the Periodic Review Board (PRB), an interagency body established pursuant to Executive Order 13567, 76 Fed. Reg. 13277 (Mar. 7, 2011), with authority to determine whether a Guantanamo detainee's continued detention is "necessary to protect against a significant threat to the security of the United States." *Id.* § 2. That decision was affirmed by a Review Committee comprised of the Secretaries of Defense, State, and Homeland Security, the Attorney General, the Chairman of the Joint Chiefs of Staff, and the Director of National Intelligence. The Review Committee concluded unanimously that Petitioner does not present a "continuing significant threat to the security of the United States," and committed to undertake "vigorous efforts" to transfer him from Guantanamo.[2] But Respondents have not made sufficient efforts to transfer him anywhere. In recent years, they have made no discernable efforts to transfer him. Nor has the district court addressed whether the government's finding that Petitioner no longer presents a threat or needs to be

---

[2] The Review Committee decision confirming the PRB decision is available at: http://www.prs.mil/Portals/60/Documents/ISN10023/Subsequent%20Review%202/211110_UPR_ISN10023_SH2_FINAL_DETERMINATION.pdf.

detained vitiates Respondents' legal authority to detain him under the Authorization for Use of Military Force (AUMF), Pub. L. No. 107-40, § 2(a), 115 Stat. 224, 224 (2001), or the Due Process Clause, because his detention no longer serves any ostensible purpose.[3] Petitioner thus continues to be held without continuing need or foreseeable end.

Petitioner accordingly petitions this Court for a writ of mandamus that disposes of his habeas petition promptly, as necessary to secure his immediate release from unlawful detention and ensure the effectiveness of the writ of habeas corpus. Mandamus is the only vehicle for Petitioner to obtain meaningful relief from the irreparable harm that he has suffered for more than two decades, and continues to suffer each day he remains indefinitely detained at Guantanamo.

## JURISDICTION

This Court has authority to issue all writs necessary or appropriate in aid of its appellate jurisdiction under 28 U.S.C. § 1651(a). This Court also has authority to order the issuance of a writ of habeas corpus under 28 U.S.C. §§ 2241 and 2243, *Boumediene v. Bush*, 553 U.S. 723 (2008), and Article III of the Constitution.

---

[3] This Court considered that issue in *Al-Hela*, but remanded it to the district court to decide in the first instance. 66 F.4th at 242-45. The issue was not resolved there because that petitioner was transferred in January 2025. No law-of-war detainee has been transferred since.

3

## RELIEF SOUGHT

1.    Petitioner requests that this Court issue a writ of mandamus that summarily grants his habeas petition and orders his release from Guantanamo, or, alternatively, that directs the district court to grant such relief, as necessary to prevent further irreparable harm and ensure the effectiveness of habeas corpus.

2.    This Court should further order Respondents to use their best efforts to facilitate Petitioner's release from Guantanamo, and report to the district court and Petitioner on a weekly basis the status of those efforts.

3.    Alternatively, if the Court determines that summary relief is not appropriate, it should direct the district court to dispose of Petitioner's habeas petition promptly on the merits. To mitigate harm resulting from additional delay that would attend a full trial on the merits, the Court should further direct the district court to grant interim habeas relief in the form of Petitioner's conditional release from the detention facility into the care of migration officials at Naval Station Guantanamo Bay pending final resolution of his habeas petition and efforts to effectuate his transfer.

## ISSUES PRESENTED

1.    Whether mandamus relief is necessary because Petitioner has been detained in U.S. custody without charge or trial for more than two decades; filed a habeas petition nearly a decade ago challenging the factual and legal basis for his

indefinite detention at Guantanamo that has not been adjudicated by the district court; was approved for release nearly five years ago; but has no other adequate means to obtain release from Guantanamo because Respondents have not made sufficient efforts to transfer him; and, thus, absent mandamus relief, would continue to suffer the very irreparable injury that he filed his habeas petition to remedy, *i.e.*, further unlawful, indefinite detention?

2.    Whether Petitioner has a clear and indisputable right to the prompt disposition of his habeas corpus petition nearly a decade after it was filed?

3.    Whether issuing a writ of mandamus is an appropriate exercise of the Court's discretion given the unique facts and circumstances of this case, including Petitioner's fundamental liberty interest in challenging his already decades-long indefinite detention, without continuing need or foreseeable end, and the core separation-of-powers interests that are implicated by his habeas petition?

4.    Whether, upon issuing a writ of mandamus, this Court should summarily grant Petitioner's habeas corpus petition and order his prompt release from Guantanamo, or grant the other relief requested by Petitioner to prevent irreparable injury and ensure the effectiveness of habeas corpus?

## STATEMENT OF FACTS

Petitioner has been detained in U.S. custody at Guantanamo for almost 20 years, without charge, trial, or foreseeable end, despite his approval for transfer

5

nearly five years ago. Notwithstanding the unanimous interagency determination that Petitioner does not pose a threat to the United States, and despite potential transfer opportunities, Respondents have not made serious efforts to transfer him to any country in several years. Petitioner thus will remain at Guantanamo, at this point potentially for life, absent a court order granting his habeas petition. Petitioner's need for judicial relief is particularly acute because of his rapid aging and ill-heath, which require repeated, urgent medical interventions. ECF Nos. 11-1 (redacted); 132, at 2 (describing Petitioner's surgeries and other medical emergencies in U.S. custody). But, as explained below and in the Classified Addendum to this Petition, he has exhausted all reasonable efforts to fully and adequately litigate his habeas case on the merits before the district court.

## A.    **Procedural History**

In March 2004, more than two decades ago, Petitioner was captured in Djibouti and disappeared into secret CIA detention. In September 2006, almost two decades ago, he was transferred to Guantanamo, where he has been detained indefinitely without charge or trial through six U.S. presidential terms. If Petitioner instead had been charged and convicted of providing material support for terrorism in federal court, which he has not—he has never been charged with any offense— he likely would have been released years ago. *Compare* 18 U.S.C. § 2339A(a) (maximum 15 years of imprisonment for material support not resulting in death).

On November 5, 2016, almost a decade ago, Petitioner filed his habeas petition challenging the factual and legal basis for his continuing detention at Guantanamo. He asserted statutory claims under the AUMF; constitutional claims under the Suspension Clause and the Due Process Clause; international law claims under *Hamdi v. Rumsfeld*, 542 U.S. 507, 521 (2004), and the traditional laws of war; and claims pursuant to the court's broad equitable, common law habeas authority. ECF Nos. 1; 11-1 (redacted). Respondents filed a factual return to the petition on May 10, 2017. ECF No. 19.

On September 11, 2017, the district court entered a case management order governing the conduct of discovery and other matters leading toward a hearing on the merits of Petitioner's habeas petition. ECF No. 27.

On September 30, 2019, more than six years ago, Petitioner filed a motion to compel discovery, and, on December 13, 2019, Respondents filed a cross-motion for an exception to its disclosure obligations under the court's case management order. These motions address serious, substantive issues that impact the core of this case. *Supra* note 1. The parties thereafter filed additional briefing, ECF Nos. 115; 124; 127; 128; 142; 172 (redacted), and argued the motions and related issues before the district court during lengthy classified hearings on October 2, 2020 and August 3, 2023. ECF Nos. 105; 147.

7

As Respondents noted in a public filing, Petitioner raised at the October 2020 hearing issues regarding "(1) the identities of certain anonymous sources; and (2) the circumstances surrounding statements made by certain other witnesses, whose names were disclosed." ECF No. 146, at 2. Petitioner also objected repeatedly to *ex parte* litigation. *Id.*; *see also* ECF Nos. 112 (redacted); 121; 172-4, at 5-8 (redacted).

At the August 2023 hearing, Petitioner's counsel further argued that the district court should review and apply heightened scrutiny of any information redacted or otherwise withheld by Respondents, pursuant to this Court's *en banc* decision in *Al-Hela*. *See also* ECF No. 172-4 (applying *Al-Hela*) (redacted). Petitioner was also permitted to address the district court directly regarding his habeas case. ECF No. 148.

On August 4, 2023, a day after the hearing, the district court issued an order requiring Respondents to file a status report responding to certain issues raised by Petitioner at the hearing, and instructing the parties to submit a joint, proposed schedule toward a merits trial. ECF No. 153. Respondents filed their status report on August 25, 2023. ECF Nos. 157; 172-8 (redacted). The parties also submitted a proposed schedule on August 25, 2023, and a proposed amendment to that schedule on September 25, 2023, including deadlines to file Petitioner's traverse,

8

motions for judgment on the record, and other motions prior to an evidentiary merits hearing. ECF Nos. 156; 158. The court did not rule on any of these filings.

In the interim, in July 2023, nearly three years ago, Petitioner filed a motion to compel a classified deposition. Briefing concluded on August 25, 2023. *Supra* note 1. The motion has not been argued or resolved by the court.

In addition, on December 1, 2023, Respondents moved to amend their factual return. ECF No. 159. The district court promptly granted that motion on December 11, 2023, without awaiting Petitioner's response. ECF No. 160. The court issued no additional rulings.

On January 10, 2024, Petitioner moved to amend the parties' proposed schedule. Although the district court had not entered deadlines for Petitioner to file his traverse or other motions preceding a merits hearing, Petitioner moved to extend the deadlines proposed by the parties months earlier, in abundance of caution and to avoid any risk of default, explaining that he could not file a traverse or proceed to a merits hearing until the court rules on the parties' discovery motions. ECF No. 161. The court did not rule on Petitioner's motion.

On February 23, 2024, Respondents submitted a sealed letter to the district court, providing further information regarding the parties' pending motions.

Seven months later, on September 30, 2024, and exactly five years after Petitioner filed his discovery motion, the district court issued an order granting

9

Petitioner's January 10, 2024 motion to amend the parties' proposed scheduling order. The court also stated that it anticipated resolving the parties' outstanding motions within 30 days "[a]bsent extraordinary circumstances." ECF No. 164. However, the district court did not rule on the parties' outstanding motions or related discovery issues, or enter a schedule toward a merits hearing in this case.

Almost a year later, Petitioner's counsel contacted the district court's staff to inquire about the pending motions. The staff informed counsel via email on August 19, 2025, that the court was still considering the motions, no further briefing was necessary, and an order would be issued accordingly.

A month later, on September 24, 2025, Petitioner filed a motion requesting rulings on the outstanding motions in this case, reiterating both his acute need for habeas relief in order finally to end his Guantanamo nightmare, and his inability to obtain such relief absent rulings by the court on all outstanding motions. Petitioner explained again that he cannot prepare for an evidentiary hearing in his case until the court rules on the discovery motions. He cannot respond fully and adequately to Respondents' arguments and evidence that purportedly support his continued detention without knowing—let alone having access to, and being able to investigate and discuss with his counsel—the universe of discoverable information in this case, which the district court has not yet determined. This is particularly so, he argued, with respect to those few, discrete discovery issues that have been the

10

principal subject of the parties' classified briefing and argument over the last six years. Respondents filed no opposition to Petitioner's motion. ECF No. 175.

Now, seven months later, the court has not issued further rulings in the case.

## B.     The Guantanamo Detention Facility

In the intervening years, the Guantanamo landscape has changed materially. The war in Afghanistan formally ended more than four years ago with the withdrawal of U.S. forces from Kabul in August 2021, the Taliban now governs that country once again, and for all practical purposes the so-called "war on terror" has long since concluded. Far from circumstances in which "United States troops are still involved in active combat in Afghanistan" for purposes of authorizing detentions under the AUMF, *Hamdi*, 542 U.S. at 521, the government announced last year its intention to repatriate Afghan immigrants from the United States based on "notable improvements in the security and economic situation" in Afghanistan, citing specifically its determination that "Afghanistan does not pose a threat to their personal safety due to ongoing armed conflict or extraordinary and temporary conditions." Press Release, *DHS Terminating Temporary Protected Status for Afghanistan*, U.S. Dep't of Homeland Sec. (May 12, 2025) (announcing end of Temporary Protected Status for Afghanistan based on changed country conditions and in consultation with the State Department), *available at*

https://www.dhs.gov/news/2025/05/12/dhs-terminating-temporary-protected-

11

status-afghanistan. To the extent the United States remains involved in an armed conflict that purportedly gave rise to Petitioner's capture and initial detention two decades ago—which Petitioner disputes—that conflict continues essentially in name only. *Compare Al-Hela*, 66 F.4th at 243. Indeed, the United States has now reached the point foreseen more than two decades ago by the Supreme Court, where "the practical circumstances of [the] given conflict are entirely unlike those of the conflicts that informed the development of the law of war," and Respondents' authority to detain Petitioner under the AUMF, as informed by the laws of war, has unraveled. *Hamdi*, 542 U.S. at 521; *see also id.* at 536 ("a state of war is not a blank check for the President"); ECF No. 1 (Petn., Count II).

Petitioner is accordingly one of only 15 men who remain in detention at Guantanamo ostensibly pursuant to the AUMF, as informed by the laws of war. Nine of those men have been charged by military commissions (including two who were convicted and are serving sentences, and one who was declared incompetent to stand trial); three are approved for transfer (Petitioner, a Libyan, and a stateless Rohingya); and three are not charged and awaiting approval for transfer.[4] Petitioner is the only detainee uncharged and approved for release with an active habeas case.

---

[4] *The Guantanamo Docket*, N.Y. Times (updated Jan. 26, 2026), https://www.nytimes.com/interactive/2021/us/guantanamo-bay-detainees.html.

By contrast, Guantanamo is now used primarily as an offshore immigration detention facility. On January 29, 2025, President Trump issued a memorandum ordering the Secretaries of Defense and Homeland Security to expand detention operations at Guantanamo to accommodate up to a reported 30,000 immigration detainees, who would be transferred there from immigration detention in the United States. *See* Memorandum, *Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity*, The White House (Jan. 29, 2025), *available at* https://www.whitehouse.gov/presidential-actions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-full-capacity/. Since February 2025, the current administration has transferred more than 750 individuals from immigration detention facilities inside the United States to Guantanamo, many of whom have been detained within the Joint Task Force—Guantanamo area of operations, in Camp 6, where law-of-war detainees such as Petitioner were previously held. *See* Carol Rosenberg, *ICE Transfers 18 Migrants from Guantanamo, Emptying Detention Site*, N.Y. Times (Oct. 2, 2025) (discussing the use of Camp 6 for immigration operations), *available at*

https://www.nytimes.com/2025/10/02/us/politics/migrants-guantanamo-detention-removal.html.[5] Nearly all immigration detainees have also been transferred from Guantanamo back to the United States or to third countries. These developments continue to predominate throughout recent news headlines, and are the subject of ongoing class action litigation before the district court. *See Suazo-Muller v. Noem*, 25-cv-418 (CJN) (D.D.C.) (challenging denial of meaningful counsel access to immigration detainees at Guantanamo); *Gutierrez v. Noem*, 25-cv-1766 (SLS) (D.D.C.) (challenging transfer and detention of immigration detainees at Guantanamo); Lead Inspector General, *Operation Southern Guard, Quarterly Report to the United States Congress, July 1, 2025 - December 31, 2025* at 7 (Feb. 25, 2026) (listing over $50 million in funding for immigration operations at Guantanamo through December 2025), *available at* https://www.stateoig.gov/report-323.

---

[5] In his habeas petition and discovery briefing, Petitioner argues the Due Process Clause extends to law-of-war detainees at Guantanamo. Because immigration detainees in the United States have constitutional rights, which they transport with them to Guantanamo while they remain in U.S. custody pending removal, *see Trump v. J.G.G.*, 604 U.S. ___ (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)), their detention strengthens Petitioner's argument that it would be neither impracticable nor anomalous to extend the same rights to him, also a non-U.S. citizen, at the same facility. *Boumediene*, 553 at 765 (government may not "switch the Constitution on or off at will"); *Al-Hela*, 66 F.4th at 248 (Pillard, J., concurring) ("It would be no more impracticable to apply the Due Process Clause than the Suspension or Ex Post Facto Clause in this context.").

Petitioner is all but lost and forgotten at Guantanamo, unseen for decades by an outside world that has changed dramatically since his capture in March 2004. *See* Carol Rosenberg, *Guantanamo Prison Enters 25th Year*, N.Y. Times (Jan. 11, 2026) ("The remaining 15 wartime prisoners at Guantanamo, ages 46 to 64, have been held in a single building since last year and are rarely seen by anybody but their guards and lawyers."), *available at* https://www.nytimes.com/2026/01/11/us/politics/guantanamo-prison-25th-anniversary.html. Hence, his imperative need for extraordinary, equitable relief in the form of a writ of mandamus.

## REASONS WHY THE WRIT SHOULD ISSUE

To obtain mandamus relief, Petitioner must show that he has "no other adequate means to attain the relief he desires"; his "right to issuance of the writ is clear and indisputable"; and "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004). These requirements are "demanding" but "not insuperable." *Id*. at 381; *In re Al-Nashiri*, 921 F.3d 224 (D.C. Cir. 2019) (granting mandamus relief to Guantanamo detainee). Petitioner satisfies each requirement.

### 1.    Petitioner Has No Other Adequate Means to Obtain Relief.

Although mandamus is an extraordinary remedy, the Court should issue the writ because Petitioner has no other adequate means to obtain relief from indefinite

detention at Guantanamo, which the parties agree is not necessary based on the unanimous Cabinet-level determination that he does not pose a threat to the security of the United States. The district court has not ruled on pending motions or moved this case toward a merits hearing on Petitioner's habeas petition. Petitioner cannot obtain relief in the ordinary course of litigation because he has exhausted all reasonable efforts to obtain relief from the district court, and there is no final judgment or other ruling from which he may appeal to this Court. Nor has the government undertaken meaningful efforts to transfer him from Guantanamo. Consequently, each day that Petitioner remains in detention at Guantanamo without judicial relief, he continues to suffer the very harm that he filed his habeas petition nearly a decade ago to remedy, *i.e.*, more unlawful detention.

Moreover, the harm caused by delay in a habeas case is not merely procedural or inconvenient. It is substantive and irreparable, and, ultimately, has constitutional significance. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (concluding in the context of prejudice from ineffective counsel that "any amount of [additional] jail time" has constitutional significance) (quoting *Glover v. United States*, 531 U.S. 198, 203-04 (2001)); *Harris v. Nelson*, 394 U.S. 286, 291-92 (1969) ("It is now established beyond the reach of reasonable dispute that the federal courts not only may grant evidentiary hearings to applicants, but must do so

16

upon an appropriate showing. . . a habeas corpus proceeding must not be allowed to founder in a procedural morass.") (quotation marks omitted).

**2.    <u>Petitioner Has a Clear and Indisputable Right to Relief.</u>**

Mandamus is also proper because Petitioner has a clear and indisputable right to the prompt disposition of his habeas petition. 28 U.S.C. § 2243 (requiring prompt disposition of habeas petitions "as law and justice require"). For almost as long as Petitioner has been held in U.S. custody, the Supreme Court has held that Guantanamo detainees have the right to petition the federal courts for prompt habeas relief. *Rasul v. Bush*, 542 U.S. 466 (2004) (holding Guantanamo detainees have a statutory right to petition for habeas relief); *Boumediene*, 553 U.S. at 795 (holding "the costs of delay can no longer be borne by those who are held in custody" at Guantanamo, and "[t]he detainees in these cases are entitled to a prompt habeas corpus hearing" under the Suspension Clause).

The Supreme Court has further held that the prompt disposition of habeas petitions is essential to preserve the writ as an effective remedy for unlawful detention. *Id.* at 783 ("[T]he writ must be effective."); *Wingo v. Wedding*, 418 U.S. 461, 468 (1974) ("[T]he 'great constitutional privilege' of *habeas corpus* has historically provided 'a prompt and efficacious remedy for whatever society deems to be intolerable restraints'") (citations omitted); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (characterizing habeas as an "effective and speedy instrument by

17

which judicial inquiry may be had into the legality of the detention of a person");

*Stack v. Boyle*, 342 U.S. 1, 4 (1951) ("Relief in this type of case must be speedy if

it is to be effective."); *Storti v. Massachusetts*, 183 U.S. 138, 143 (1901)

("[S]ubstantial justice, promptly administered, is ever the rule in habeas corpus.");

*see also Braden v. 30th Jud. Cir. Court of Ky.*, 410 U.S. 484, 490 (1973) (noting

interests of prisoner and society in "preserv[ing] the writ of habeas corpus as a

swift and imperative remedy in all cases of illegal restraint or confinement")

(quotation marks omitted).

This Court and other appellate courts have also emphasized the need to

dispose of habeas petitions promptly to preserve habeas corpus as an effective

remedy for arbitrary or otherwise unlawful detention. *Cross v. Harris*, 418 F.2d

1095, 1105 n.64 (D.C. Cir. 1969) ("This is a habeas corpus proceeding, and thus

particularly inappropriate for any delay."); *Johnson v. Rogers*, 917 F.2d 1283,

1284 (10th Cir. 1990) (absent good reason, "the function of the Great Writ would

be eviscerated" by delays in deciding habeas petitions); *Yong v. INS*, 208 F.3d

1116, 1119-20 (9th Cir. 2000) (district courts have less discretion to stay habeas

proceeding); *Ruby v. United States*, 341 F.2d 585, 587 (9th Cir. 1965) ("The

application for the writ usurps the attention and displaces the calendar of the judge

or justice who entertains it and receives prompt action from him within the four

corners of the application."); *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737-38 (9th

Cir. 1954) ("[The Writ] is a speedy remedy, entitled by statute to special, preferential consideration to insure expeditious hearing and determination."); *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) ("The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time.").

### 3.     The Writ Is Appropriate Under the Circumstances of This Case.

The Court should grant mandamus relief to prevent further irreparable harm to Petitioner and ensure the effectiveness of habeas corpus as a remedy for unlawful detention. Mandamus is particularly appropriate for two reasons.

First, mandamus relief is necessary and appropriate to protect Petitioner's fundamental liberty interest in securing his freedom from arbitrary or otherwise unlawful detention. *Boumediene*, 553 U.S. at 739 ("The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom."); *Rasul*, 542 U.S. at 474 ("[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.") (quoting *INS v. St. Cyr*, 533 U.S. 289, 301 (2001)); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (freedom from bodily restraint "has always been" a core liberty interest).

Petitioner's significant liberty interest may be balanced with Respondents' purported national security interests in detaining him. *Hamdi*, 542 U.S. at 531 ("We reaffirm today the fundamental nature of [a law-of-war detainee's] right to be free from involuntary confinement . . . and we weigh the opposing governmental interests against the curtailment of liberty that such confinement entails."). But Respondents' national security interests have become decidedly weaker, and Petitioner's core liberty interest has become indisputably stronger, as the years of his indefinite detention have dragged on—and would undoubtedly continue to drag on without foreseeable end absent mandamus relief. This is particularly so given the government's unanimous determination, almost half a decade ago, that Petitioner no longer presents a threat warranting his continued detention. *Rasul*, 542 U.S. at 488 (Kennedy, J., concurring) ("[A]s the period of detention stretches from months to years, the case for continued detention to meet military exigencies becomes weaker."); *Boumediene*, 553 U.S. at 783 (holding the "duration of the detention and the reasons for it bear upon the precise scope of the inquiry," and "the writ must be effective"); *id.* at 779 ("Indeed, common-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances.").

At this point, extraordinary relief is appropriate because with each passing day the risk of Petitioner's erroneous deprivation of liberty and the harm from

20

irreversible delay are compounded. *Id.* at 781 (meaningful habeas review requires consideration of "the risk of an erroneous deprivation of [a liberty interest] and the probable value, if any, of additional or substitute procedural safeguards") (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *Al-Hela*, 66 F.4th at 228-32 (same). Indeed, it is the court's duty promptly to grant relief from Petitioner's intolerable situation. *Harris*, 394 U.S. at 292 ("There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law."); *Smith v. Bennett*, 365 U.S. 708, 712-13 (1961) ("Over the centuries it has been the common law world's 'freedom writ' by whose orderly processes the production of a prisoner in court may be required and the legality of the grounds for his incarceration inquired into, failing which the prisoner is set free. We repeat what has been so truly said of the federal writ: 'there is no higher duty than to maintain it unimpaired.'") (citation omitted).

Second, mandamus relief is necessary and appropriate because habeas petitions implicate core separation-of-powers interests, serving as a check against the "undivided, uncontrolled power" of arbitrary or unlawful executive detention by holding a jailor to account for a prisoner held in his custody. *Boumediene*, 553

21

U.S. at 742; *id.* at 743 (habeas is "an essential mechanism in the separation-of-powers scheme"); *id.* at 765 ("[H]abeas corpus is itself an indispensable mechanism for monitoring the separation of powers"); *Wingo*, 418 U.S. at 468 ("Under our constitutional framework, the great constitutional privilege of habeas corpus, has historically provided a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release.") (cleaned up).

In sum, mandamus relief is appropriate here not only to remedy the continuing harm to Petitioner, but also to ensure that habeas is effective and fulfills its core, historical purpose. *Boumediene*, 553 U.S. at 797 ("Security subsists . . . in fidelity to freedom's first principles. Chief among these are freedom from arbitrary and unlawful restraint and the personal liberty that is secured by adherence to the separation of powers. It is from these principles that the judicial authority to consider petitions for habeas corpus relief derives."); The Federalist No. 84 (Alexander Hamilton) ("[C]onfinement of the person, by secretly hurrying him to jail, where his sufferings are unknown or forgotten, is a less public, a less striking,

22

and therefore a more dangerous engine of arbitrary government. And as a remedy for this fatal evil [ ] is habeas-corpus") (quoting William Blackstone).

4.    **The Court Should Summarily Grant Petitioner's Habeas Petition and Order Other Relief to Prevent Further Irreparable Harm and Ensure that Habeas Corpus Is Effective.**

This Court should fashion necessary and appropriate mandamus relief in the form of an order: (1) summarily granting Petitioner's habeas corpus petition and ordering his release from Guantanamo, or, alternatively, directing the district court to grant such relief; and (2) ordering Respondents to use their best efforts to transfer Petitioner and report those efforts on a weekly basis to the district court and to Petitioner. The Court should require the weekly reports to be unclassified to the maximum extent possible, with classified addenda, if needed, to ensure transparency and maintain public confidence regarding Respondents' best efforts to transfer Petitioner.

Alternatively, if the Court concludes that summary relief is not appropriate, it should direct the district court to dispose of Petitioner's habeas petition promptly on the merits. To mitigate harm from additional delay that would attend a full trial on the merits, the Court should further direct the district court to grant interim habeas relief in the form of Petitioner's conditional release from the detention facility into the care of migration officials at Naval Station Guantanamo Bay pending final resolution of his habeas petition and efforts to transfer him.

The Court has authority to grant this relief, and should exercise that authority given the unique and extraordinary facts and circumstances of this case to remedy what otherwise amounts to an unlawful suspension of the writ of habeas corpus.

### i.     The Court Has Authority to Grant Summary Relief.

This Court has authority to grant mandamus relief in the form of an order summarily granting Petitioner's habeas petition, where, as explained below, that specific relief is required to fully and adequately remedy the district court's extensive delay in adjudicating Petitioner's habeas case. 28 U.S.C. § 1651(a). Indeed, this Court has broad, plenary authority to grant habeas corpus relief directly. 28 U.S.C. § 2241(a) (habeas may be granted by "any circuit judge within their respective jurisdiction[ ]"); *id.* § 2243 (habeas court must "dispose of the case as law and justice require"); *Harris*, 395 U.S. at 293 ("The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary.") (internal quotations and citations omitted); *id.* at 291 ("The scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with

24

the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.").

The Court's authority is rooted in common law equitable principles. *Boumediene*, 553 U.S. at 779 ("Indeed, common-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances."); *Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus is, at its core, an equitable remedy."); *Sanders v. United States*, 373 U.S. 1, 17 (1963) ("[H]abeas corpus has traditionally been regarded as governed by equitable principles"); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (habeas corpus "always could and still can reach behind prison walls and iron bars. But it can do more. It is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty."). *See also McClesky v. Zant*, 499 U.S. 467, 502 (1991) (courts have equitable discretion to correct a miscarriage of justice); *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (courts also have not hesitated to fill perceived gaps in a statutory scheme, place a central focus on justice rather than law, and impose flexible, pragmatic remedies in habeas); *In re United States*, 143 F.4th 411, 440 (D.C. Cir. 2025) (granting Guantanamo mandamus petition and noting relief "controlled by equitable principles"); Paul D. Halliday, Habeas Corpus: From

England to Empire 87 (2010) (common law writs ensured errors were corrected and justice was done even absent preexisting rules or precedent).

The law is equally clear that a court has authority to enter any form of order, where, as here, the requested relief directly compels or indirectly hastens or affects Petitioner's release from custody. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) (noting habeas courts have the "power to fashion appropriate relief other than immediate release."); *Carafas*, 391 U.S. at 239 (emphasizing habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted.").

### ii.     The Court Should Exercise Its Authority Given <u>the Unique Facts and Circumstances of this Case.</u>

Petitioner's request for the Court to shape the scope of mandamus relief to summarily grant his habeas petition, order his release from Guantanamo, and require Respondents to report their efforts to transfer him is unique to the facts and circumstances of his case. It is a matter of singular importance because Petitioner is the only remaining law-of-war detainee at Guantanamo who is approved for transfer and has an active habeas case. But his request for relief is nonetheless of overriding importance, and should be granted for at least two reasons.

First, an order summarily granting Petitioner's habeas petition and ordering his release would necessarily compel his transfer from Guantanamo, ending his decades-long custody without charge or trial, which the government unanimously

concluded is no longer necessary because he does not pose a threat. A court order would also trigger a statutory exception to certification requirements by Executive Branch officials that otherwise apply to law-of-war detainee transfers from Guantanamo.[6] A court order would likewise avoid a separate statutory ban on law-of-war detainee transfers directly to Somalia, his home country, which would obviate the need for a more diplomatically and logistically complex resettlement of Petitioner in a third country.[7] In addition, an order requiring Respondents to use their best efforts to transfer him, and to report weekly on those efforts, in an unclassified manner, to the district court and to Petitioner, would expedite his release by ensuring that Respondents pursue and maintain consistent efforts to transfer him—something they represented they would do "vigorously" almost three years ago, but, in practice, have abandoned, forgotten, or otherwise failed to effectuate.

Second, this specific relief is required to fully and adequately remedy the district court's long delay in adjudicating Petitioner's habeas case. It is necessary for this Court to grant Petitioner's habeas petition summarily in the context of this mandamus petition, rather than issuing more common mandamus relief that returns

---

[6] National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114-92, § 1034(a)(2), 129 Stat. 726, 969 (2015).

[7] *Id.* § 1033; National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, § 1034, 139 Stat. 718, 1034 (2025).

the case to the district court with instructions to dispose of it promptly on the merits, for several reasons.

At this point, full merits proceedings should be unnecessary and superfluous given that Petitioner has long been approved for transfer on the ground that he does not present a threat. The ultimate outcome of this case should not be in doubt. Yet, if full merits proceedings nonetheless were required to reach that outcome, those proceedings would undoubtedly involve more delay. Indeed, given the number of issues that would have to be litigated, if only to avoid waiving any merits arguments for Petitioner's release, many of which would involve highly classified information, but none of which would change the ultimate outcome that both parties agree is appropriate, *i.e.*, Petitioner's transfer from Guantanamo, merits proceedings could possibly involve years of additional litigation in the district court and before this Court before the case reached a final resolution.

Additional delay is particularly likely given the significant legal issues addressed in the parties' pending discovery motions that impact the core of this case. As explained in the Classified Addendum to this Petition, given the nature of the pending discovery issues, which would have to be decided if Petitioner's case were to be tried on the merits, his case would undoubtedly return to this Court (perhaps multiple times) to address serious statutory and constitutional questions, including a question this Court has assiduously avoided for two decades in

28

Guantanamo habeas cases concerning application of the Due Process Clause to detainees at the detention facility. *Al-Hela*, 66 F.4th at 222 (declining to decide whether due process protections apply to Guantanamo detainees); *supra* note 5.

Additional litigation would also require the resolution of significant statutory questions concerning the AUMF, including its implied grant of detention authority which is the only legal basis alleged by Respondents for Petitioner's detention at Guantanamo. For example, and without limitation, those questions would include: (1) whether, and to what extent, the AUMF may have extended at any point in time to Somalia or other nations in the Horn of Africa; (2) whether there are geographic limitations on the scope of AUMF authority; (3) whether the authority to detain individuals at Guantanamo under the AUMF, as informed by laws of war, has now lapsed; and (4) whether the AUMF has any remaining force or effect nearly 25 years after the attacks of September 11, 2001, and after the official end of hostilities in Afghanistan nearly five years ago. The court also would be required to determine the impact of Petitioner's PRB clearance on Respondents' AUMF detention authority, which, again, this Court initially deferred in the *Al-Hela* case.

*Supra* at 3 & n.3.[8]

In other words, despite the parties' agreement that Petitioner should be transferred, if this Court were to return this case to the district court for a full habeas trial on the merits, followed by possible appeals, the case may be bogged down for years in litigation concerning issues that should no longer be integral to Petitioner's detention given his longstanding approval for transfer. In these respects, too, given the lengthy delays that have attended the resolution of this case to date, habeas corpus would have failed to fulfill its core purpose as an imperative remedy for unlawful detention, contrary to centuries of history and legal precedent. If the remedy for the already inordinate delay of Petitioner's habeas case resulted in even more delay, then habeas would no longer credibly serve as a swift and imperative remedy for all manner of unlawful restraint. Habeas review would no longer be meaningful; it would be an "empty shell." *Boumediene*, 553 U.S. at 785;

---

[8] The AUMF must be construed narrowly to avoid the serious constitutional questions raised by Petitioner's case. *St. Cyr*, 533 U.S. at 299-300 (habeas court is "obligated to construe the statute to avoid [constitutional] problems."); *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) (construing detention statute narrowly to avoid constitutional issues). The AUMF does not directly authorize detention; that authority is inferred from Congress's authorization of "necessary and appropriate" force, but only in the "narrow circumstances" where necessary to prevent return to the battlefield consistent with traditional law-of-war principles. *Hamdi*, 542 U.S. at 520; *see also id.* at 544 (Souter, J., concurring) (when asked to find implied powers in grant of legislative authority during wartime, the Court assumes Congress intended no greater restraint on liberty than "clearly and unmistakably indicated by the language they used") (citations omitted).

*Johnson v. Avery*, 393 U.S. 483, 485 (1969) ("The Court has steadfastly insisted that there is no higher duty than to maintain it unimpaired.") (quotation marks and citation omitted). In sum, after so much delay there is no practical way for this Court to remedy an improper suspension of the writ of habeas corpus except by issuing a writ of mandamus that summarily grants his habeas petition.

### iii.    Alternatively, the Court Should Order the District Court to Dispose of Petitioner's Habeas Petition Promptly and Order Interim Habeas Relief.

If the Court nonetheless grants mandamus relief and returns the case to the district court for merits proceedings, it should direct the district court to dispose of Petitioner's habeas petition promptly. The Court should mitigate the delay that would plainly attend further merits proceedings—even prompt proceedings—by ordering the district court to grant interim habeas relief in the form of Petitioner's conditional release into the care of migration officials at Guantanamo pending final disposition of his petition and diplomatic efforts to effectuate his safe transfer.

Interim relief that transfers Petitioner out of law-of-war custody and into the care of migration officials would be necessary, at minimum, to mitigate the harm from additional delay that would likely follow from further litigation, both in the district court and before this Court on appeal. Although Petitioner should be released from Guantanamo, interim relief would provide greater attributes of freedom, such as less-restrictive conditions of confinement, and greater ability to

31

communicate freely with his family and access the outside world, which are available to migrants at the leeward-side Migration Operations Center (MOC) but denied to Petitioner at the windward-side detention facility at Guantanamo. After two decades of indefinite detention and a decade of habeas litigation, affording Petitioner some modicum of greater freedom while he awaits the final and long-overdue resolution of his case would not only help to alleviate the burdens of his ongoing detention but also demonstrate that the habeas writ remains effective. *See In re Al-Nashiri*, 921 F.3d at 239 (noting that in exercising discretion to grant mandamus relief, the Court may consider the risks of injustice to the parties and undermining public confidence in the judicial process).

The Court indisputably has authority to order interim relief, including Petitioner's conditional release from law-of-war custody into the care of migration officials at the MOC pending final disposition of a habeas petition. *Boumediene*, 553 U.S. at 729 ("[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained . . ."); *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("Federal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief.") (citing 28 U.S.C. § 2243); *Hensley v. Municipal Court*, 411 U.S. 345, 352 (1973) (habeas authority includes the power to "order [a] petitioner's release pending consideration of his habeas corpus claim") (citation

omitted); *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969) ("When an action pending in a United States court seeks release from what is claimed to be illegal detention, the court's jurisdiction to order release as a final disposition of the action includes an inherent power to grant relief *pendente lite*, to grant bail or release, pending determination of the merits."). It is little to ask for the Court to exercise that authority in this case given the pain and suffering that have attended all aspects of Guantanamo for more than 24 years, and Petitioner's case, in particular, for more than 20 years.

It is not 2004. If Petitioner was at war with anyone at the time he was captured—which he denies—that war ended long ago. As Petitioner explained to the PRB that approved him for transfer in 2021, he was captured a lifetime ago.[9] He spent years in CIA detention and has been held at Guantanamo for decades. He has suffered tremendously, and the status quo is intolerable, inhumane, and contrary to law. Petitioner's detention is no longer necessary, but relief will only come, finally, with a court order.

## CONCLUSION

Petitioner respectfully requests that the Court grant this Petition.

---

[9] Petitioner's full statement is available at: http://www.prs.mil/Portals/60/Documents/ISN10023/Subsequent%20Review%202/210729_ISN10023_SH2_DET_STATEMENT_UPR.pdf.

Dated:     May 6, 2026

Respectfully submitted,

/s/ J. Wells Dixon
J. Wells Dixon [Bar No. 51138]
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6423
wdixon@ccrjustice.org

Sabrina Shroff
80 Broad Street, 19th Floor
New York, New York 10004
Tel: (646) 763-1490
Sabrinashroff@gmail.com

Wayne J. Aaron
2832 Glen Ellen Drive
Flower Mound, Texas 75022
Tel: (214) 668-7735
wjaaron@tx.rr.com

Michael P. Leahy, Maj, USAF [Bar No. 65813]
Military Commissions Defense Organization
1620 Defense Pentagon
Washington, D.C. 20301-1620
Tel: (757) 927-5058
michael.p.leahy15.mil@mail.mil

*Counsel for Petitioner*

34

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P.

21(d)(1) because, excluding the parts of the document exempted by Fed. R. App.

P. 32(f) and the Classified Addendum filed via the Court Security Officer in

accordance with Fed. R. App. P. 21(a)(2)(C), this document contains 7731 words.

2.      This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Word 2019 in 14-point font size and Times New Roman type style.


Dated: May 6, 2026


                                        Respectfully submitted,

                                        /s/ J. Wells Dixon
                                        *Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2026, I caused this Petition to be filed via the Court's CM/ECF system, and served upon the following counsel for Respondents via Federal Express at their office address:

Kristina A. Wolfe, Esq.
  Senior Trial Counsel
Elisabeth J. Neylan, Esq.
  Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, DC 20005

I also caused a copy of this Petition to be delivered via Federal Express to the U.S. District Court Judge.

In addition, I caused copies of the Classified Addendum to this Petition to be filed under seal with this Court, served on counsel for Respondents, and delivered to the U.S. District Court Judge via the Court Security Officer.

Dated: May 6, 2026

Respectfully submitted,

/s/ J. Wells Dixon
*Counsel for Petitioner*

36

## ADDENDA

Certificate as to Parties, Rulings, and Related Cases, Pursuant to Circuit Rule 21(d)

Classified Addendum [filed separately under seal].

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES, PURSUANT TO CIRCUIT RULE 21(d)

**I.    Parties and *Amici* Appearing Below**

1.    Petitioner is Guled Hassan Duran, Detainee ISN 10023, U.S. Naval Station at Guantanamo Bay, Cuba.

2.    Respondents are Donald J. Trump, President of the United States; Pete Hegseth, U.S. Secretary of Defense; and U.S. Army Colonel Steven Kane, Commander, Joint Task Force – Guantanamo.[10]

3.    There are presently no *amici* or intervenors appearing below.

**II.    Parties and *Amici* Appearing in this Court**

1.    Petitioner is Guled Hassan Duran, Detainee ISN 10023, U.S. Naval Station at Guantanamo Bay, Cuba.

2.    Respondents are Donald J. Trump, President of the United States; Pete Hegseth, U.S. Secretary of Defense; and U.S. Army Colonel Steven Kane, Commander, Joint Task Force – Guantanamo.

3.    There are presently no *amici* or intervenors appearing in this Court.

---

[10] Respondents are public officials who were automatically substituted as parties in their official capacities pursuant to Fed. R. Civ. P. 25(d) and Fed. R. App. P. 43(c)(2).

### III.    Rulings Under Review

This case involves a petition for a writ of mandamus to the U.S. District Court for the District of Columbia for failing promptly to adjudicate Petitioner's habeas corpus petition. It does not seek review of any specific order of the court below.

### IV.    Related Cases

Petitioner has a habeas corpus case, *Duran v. Trump*, pending in the U.S. District Court for the District of Columbia, Case No. 16-cv-2358.

Dated: May 6, 2026

Respectfully submitted,

/s/ J. Wells Dixon
*Counsel for Petitioner*

39